IN THE UNITED STATTES DISTRICT COURT
FOR WESTERN DISTRICT OF PENNSYLVANIA

SAMUEL L. BROOKS,                                    Civil Action
          Plaintiff,                              No.  2:21-cv-01228-LPL

      v.

ORLANDO L. HARPER, Warden of                   JURY TRIAL DEMANDED
Allegheny County Jail, LAURA K.
WILLIAMS, Chief Deputy Warden of
Healthcare Services, DAVID ZETWO,
Chief Deputy Warden, JASON BEASOM,
Deputy Warden, COUNTY OF
ALLEGHENY, SERGEANT RAIBLE,
OFFICER TUCKER and TRINITY
SERVICES GROUP

          Defendants.

**Defendants' Brief in Support of Their Motion to Dismiss For Failure to State a Claim**

Defendants Orlando Harper, Laura Williams, David Zetwo, Jason Beasom. Sergeant

Raible, Officer Tucker, and Allegheny County by Assistant County Solicitor John A. Bacharach

submit this brief in support of their Motion to Dismiss the Complaint for  Failure to State a

claim.

**Allegations of Fact**

On September 15, 2019, Brooks, an Allegheny County Jail (ACJ), inmate was eating

oatmeal when he bit into a bag containing a foreign substance. ECF Doc. 1, ¶¶ 12-14. The

foreign substance in the bag apparently was or included cocaine. *Id*. at ¶ 22. Brooks reported

what happened to Corrections Officer Tucker, who was present. Brooks became ill, but  he did

not receive adequate medical treatment. ¶14. No investigation was conducted by the ACJ about

the foreign substance in his oatmeal. ¶¶ 18, 23

Because Brooks was concerned about the safety of his food served where his cell was

located, he refused to return to it. ¶¶ 21-22 Brooks was placed in restricted housing for 3 days

after he would not return to his assigned cell. *Id.*  He was released from restricted housing on

September 18, 2019. *Id.* Brooks was not allowed a shower by Officers from October 18 to

October 21.  ¶ 47.

Brooks filed a grievance related to his medical treatment and food service.  ¶ 35. After he

filed his grievance, Brooks was treated unfairly by the ACJ.  ¶35. The ACJ then refused to give

Brooks a "secure food tray."  ¶ 40. (The term "secured food tray" is not defined.) Brooks refused

to return to the housing unit where the contaminated food incident occurred, and then officers

moved him to another Pod after as punishment for being out of cell.  ¶ 42. Officer Arlotta made

disparaging remarks about him when he asked to be in a cell with his uncle. ¶ 45. Officer

LeFleur disposed of his property after a search because he was writing grievances.[1]  46.

Brooks was on a hunger strike for an unspecified period of time in November 2019.  He

stopped his hunger strike because he ran out of money to buy food from the commissary. ¶¶ 48-

49. Brooks' skipped meals were not documented.  ¶ 49. Medical staff just gave him Tylenol for

his headaches.  ¶ 50. Brooks had a personal problem with Officer Arlotta and feared that the

Officer would plant something in his cell.  ¶ 51. Brooks was unable to shower for four days and

an officer laughed and said a fifth day would not hurt. ¶ 52.

In response to his complaints about medical treatment, Brooks was seen by medical on

November 19 and December 3, 2019.  ¶ 53. On December 12, 2019 Officer Rush asked Brooks

to fight him and accused Brooks of providing oral sex to another inmate and said that he was a

snitch.  Captain Young was informed and took no action.[2] ¶ 54-56.

Plaintiff alleged that the jail had been withholding his mail and staff had been "hostile

---

1 Neither Officer  LaFleur nor Officer Arlotta are defendants in this case.
2  Neither Officer Rush nor Captain Young are defendants

toward" him since the contaminated food incident because he had filed grievances. Brooks goes

on to allege that the Warden informed him he had not received his  grievances.  ¶ 34.

**Count I - Conditions of Confinement**
**All Defendants**

Count I alleges that all of the Defendants subjected Brooks to conditions of confinement

that violated his right to humane conditions of confinement by,

1.      failing to keep the ACJ free from contraband,

2.      failing to send him to the emergency room,

3.      failing to reasonably investigate "into Plaintiff's situation," and

4.      failing to provide "poison free food."

**Count II - Medical Care**
**All Defendants**

Count II alleges that all of the Defendants subjected Brooks to inadequate medical care

that violated his right to humane conditions of confinement by,

1.      failing to adopt proper policies, and

2.      retaliating against him for filing grievances.

**The Specific Allegations Against the Defendants**

**Orlando Harper.** Orlando Harper is the Warden of the Allegheny County Jail. Warden

Harper allegedly told Brooks that he had not received his grievances.  ECF Doc. 1, ¶ 34.

**Laura William**s. Laura Williams is the Allegheny County Jail's Chief Deputy Warden

for Health Services. Brooks alleged that he submitted a request to staff  directed to her on

September  17, 2019, informing her that he had received contaminated oatmeal and that he had

been sent to restricted housing for asking about it. *Id.* at ¶ 31.  On September 19, 2019,  he

received a letter from Williams informing him that his urine tested positive for cocaine and that

if he wanted additional information he could request his medical records. That letter is attached

to the Complaint as Exhibit 1. *Id.* at Exhibit 1.

**David Zetwo**. David Zetwo was the Chief Deputy Warden for Operations. Brooks filed a request to staff on September 17, 2019 directed to him complaining that he had been placed in restricted housing without a shower for three days and he had been poisoned. As noted above Brooks was removed from restricted housing after three days, that is on September 18, 2019.

**Jason Beasom**. Jason Beasom is not mentioned in the Complaint, except to identify him as a Defendant and to allege that he responded to the contaminated food incident on September 15, 2019. *Id.* at ¶18.

**Sergeant John Raible**. Sergeant John Raible allegedly took possession of the foreign substance in Brooks' oatmeal and left the unit.  *Id.* at¶ 18.

**Officer Tucker.** Officer Tucker was present when Brooks was eating the contaminated oatmeal. He picked up the bag with the unknown substance and put it on his desk and called for medical assistance. Tucker did not preserve the bag, but as noted above, Sergeant Raible took possession of the bag. *Id.* at ¶¶ 14, 18.

 **Allegheny County**. Allegheny County's role is not specifically identified, but one may presume that Brooks is making a *Monell* claim that the alleged constitutional violates were caused by a deliberately indifferent Allegheny County policy or practice.

### 1.  Neither Personal nor Supervisory Liability Has Been Plausibly Alleged.

#### a. Personal Liability Claims Against Harper, Williams, Beason, and Zetwo

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States.  *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a

constitutional right. *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011). Personal involvement exists when a defendant plays an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

*Estate of Smith v Marasco*, 430 F.3d 140, 151 ( 3rd Cir. 2005) (In a Section 1983 action, a plaintiff must show liability as to each individual defendant. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Direct references to Warden Harper and Deputy Wardens Williams, Beason, and Zetwo in the complaint are scant. There is no evidence that Warden Harper and Deputy Wardens Williams, Beason, and Zetwo were personally involved in any of the events described in his complaint, except  Deputy Warden Williams. Her sole involvement was that  she wrote a letter to Brooks two days after he found the contaminant in his oatmeal informing him that cocaine had been identified in his urine. Indeed, the Complaint does not even allege that any of these officers ever spoke to Brooks or were present when the event occurred. There can simply be no rational argument on this point, which leaves only the theory that  Warden Harper and Deputy Wardens Williams, Beason, and Zetwo can only have liability as supervisors.

### b. Supervisory Liability Claims Against Harper, Williams, Beason, and Zetwo

Supervisory liability may attach if the supervisor personally participated in violating or personally directed others to violate a person's rights or knew of and acquiesced in a subordinate's unconstitutional conduct.[3] No such personal conduct by Harper, Williams, Beasom and Zetwo has been pled. Harper did not receive a grievance. Williams wrote him a letter notifying him that his urine tested positive for cocaine. Beasom did nothing. Brooks sent Zetwo a

---

3 This part of the supervisory-liability test is consistent with the general notion, already articulated *supra*, that no individual defendant—whether a supervisor or not—can be held individually liable without some form of personal involvement in the alleged wrongdoing.

complaint about being in restricted housing and he was released the next day. However, liability

may attach if the supervisor, with deliberate indifference to the consequences of a policy or

procedure, established and maintained a policy or procedure that directly caused constitutional

harm. *Dinote v. Danberg*, 601 F.Appx. 127 (3d Cir. 2015).

In the policy/procedure context—a plaintiff must prove the following four elements to

establish supervisory liability:

1a.    the defendant-supervisor's policy or procedure created an
unreasonable risk of a constitutional violation;

2.    the defendant-supervisor was aware that the policy or procedure created the
unreasonable risk;

3.    the defendant-supervisor was subjectively indifferent to that
risk; and

4.    the constitutional injury was caused by the failure to
implement an appropriate supervisory policy or procedure.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

The Complaint only makes broad and conclusory averments  about inadequate policies

and procedures, but it fails to provide any facts that make those conclusions plausible in this

case. Moreover, it fails to connect the unspecified policies to any of these Defendants. As to the

procedure, Brooks does not specify any specific constitutional defect. Conclusory allegations

substituting for facts should be disregarded by a court when considering a motion to dismiss a

complaint for failure to state a claim. *Ashcroft v Iqbal*, 556 U.S. 662, 678, 680-681 (2008)

(formulaic recitations of the elements of a Section 1983 violations may be disregarded);

*Snatchko v Peters*, *Township*, 2012 WL 6761369 at 12 (W.D. PA. December 28,2012) (

allegations that the Township encourages and tolerated alleged unconstitutional practices are

"attempts to couch illusory legal conclusions as facts").

**2.  A single incident of contaminated food served to  a jail inmate does not violate the Fourteenth Amendment**

A pretrial detainee has the right to adequate nutrition. However, a single or isolated instance of spoiled or unsanitary food does not violate a detainee's constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877 (1979), *Robinson v. Danberg*, 673 F. App'x 205, 213 (3d Cir. 2016). Brooks attempts to avoid the problem raised by the contamination of his food being a single incident by alleging that there  was another "poisoning" incident, but providing no date, time or any specifics. ECF Doc. 1, ¶ 20. Assuming this is true, it does not come close to establishing anything more than an occasional occurrence. The Court may take judicial notice that the ACJ is a large urban jail. Even if it only served three meals a day to 1,000 inmates that is 24,000 meals every week.

**c. Sergeant Raible and Officer Tucker**.

The claim against Raible and Tucker is that they did not preserve the bag containing the alleged contaminant in Brooks' oatmeal.  Brooks does not, however, explain how this conduct violated his right to life, liberty or property or what injury was caused by it. Moreover, their failure to preserve the substance was negligence, at the most, which is clearly insufficient to state a claim against them under Section 1983.

**2.  Plaintiff's allegations that his medical care was inadequate fail to state a plausible Fourteenth Amendment violation claim.**

**a. Prison Medical Care Generally**

In general, a pretrial detainee claiming injury caused by inadequate medical care has the burden to show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference.  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A prisoner bringing a medical-needs claim "must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.

1993).   "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care ... [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer*, 991 F.2d at 69. "We have found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). *Parkell v. Danberg*, No. 14-1667, 2016 WL 4375620, at 14 (3d Cir. Aug. 17, 2016).

Courts have also held that deliberate indifference can be found only if prison officials know of and disregard an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, *supra* 114 S.Ct. at 1970 (1994). Deliberate indifference is an exacting standard.  *Sadelmyer v. Peltzer*, 2013 WL 4766517, 4 (W.D.Pa., filed September 4, 2013); *Pew v. Boggio*, No. 3:15-CV-1042, 2016 WL 3024947, at 5 (M.D. Pa. May 4, 2016), report and recommendation adopted, No. 3:15-CV-1042, 2016 WL 3001136 (M.D. Pa. May 25, 2016). Moreover, the deliberate or reckless indifference required for liability under Section 1983 is a subjective indifference, not merely an objective one. *Farmer v. Brennan, supra, 114* S. Ct. 1970, 1978; *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 323 (3d Cir. 2014), reversed on other grounds, *Taylor v. Barkes*, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015).[4]

---

4  *Barkes* involved a suicide, but inmate suicides are a sub-category of the requirement that the government provide persons it incarcerates with reasonable care for serious medical conditions. 766 F.3d 307, 340 (3d Cir. 2014)

However, a prison official is not deliberately indifferent to that need if the official defers to the judgment of medical personnel about what medical services a detainee requires. *Durmer v. O'Carroll*, *supra at* 67-69. See also, *Abdul-Karim Ali v. Terhune*, 113 F. App'x 431, 434 (3d Cir. 2004). Accordingly, unsuccessful medical decisions, negligence, or even medical malpractice by a medical provider is insufficient to establish that a prison official was deliberately indifferent to a detainee's serious medical need *Id.* Consistent with the aforesaid concepts, a non-medical prison official is usually justified in believing that a prisoner is receiving appropriate care if that prisoner is under the care of medical experts. *Spruill*, 372 F.3d at 236. Prisoner health and safety are promoted, not hindered, by dividing responsibility for the prisoner among corrections officers, administrators, and medical personnel. *Id.* Consequently, a prison official will not be chargeable with deliberate indifference to a prisoner's medical needs absent either (1) actual knowledge that the prisoner is being mistreated/not treated or (2) reason to believe that such is the case. *Id.* Reason to believe that a prisoner is not being treated appropriately may arise if the plaintiff proves the prison officials failed to correct specific, known deficiencies in the provision of medical care to the inmate population. *Barkes*, 766 F.3d at 324. As such, deliberate indifference may be shown by evidence that the officials failed to respond to a known pattern of injuries that are similar to the one allegedly suffered by the prisoner. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Plainly, the reason that deliberate indifference to a particular prisoner can be inferred in such a situation is that the failure to respond to a known pattern of specific, similar injuries among the general population would effectively expose the individual prisoner to that same type of harm. *Id.*

Finally, courts are not permitted to infer in hindsight, from the alleged substandard medical treatment, that prison officials were recklessly or deliberately indifferent to their obligation to take

reasonable precautions to protect the prisoner's safety.  *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988); *Ferencz*, 2014 WL 3339639 at 3 (prisoner suicide cases).

**Conclusion as to medical care claims brought under Section 1983**

This case is significantly different than those in which courts have found that the facts could support a finding of reckless and/or deliberate indifference. This is not a case where prison officials knew a detainee had a serious medical condition and then took no steps whatsoever to protect him, *see Colburn I*, 838 F.2d at 669. The instant matter is also not a case where prison officials knew of and disregarded an excessive risk to the detainee's health or safety, *see Farmer*, 511 U.S. at 837-38.

Rather, the Complaint reveals that the County, through its jail, provided Brooks with medical care for his health issues.  No facts pled in the Complaint demonstrate that any Allegheny County policy or custom denied Brooks any rights, constituted any type of indifference, or caused Brook's injuries or that any of the natural person defendants caused necessary medical care to be withheld for non-medical reasons.   Likewise, there is no evidence that Warden Harper or any of the other individual defendants were at fault under a theory of supervisory liability or in some other fashion.

**3.  The Plaintiff  pleads no facts that Allegheny County or any of the individual defendants allow illicit substances to be passed throughout the jail or brought in by employees.**

Plaintiff alleges that the defendants create dangerous conditions of confinement by allowing illicit substances to be passed in the Allegheny County Jail and by allowing employees to import and distribute illicit substances to inmates. ECF Doc. 1. ¶ 69.

A jail has the duty to provide humane conditions for inmates. *Farmer v. Brennan*, *supra*. However, a constitutional violation occurs only where the deprivation alleged is, objectively

sufficiently serious and the official has acted with "deliberate indifference" to inmate health or safety. *Id* 511 U.S. 825, 825–26, 114 S. Ct. at 1980–83.  Deliberate indifference is  more than negligence, but less than something done with the intention of causing injury. It is in essence acting recklessly.  However, for a defendant's deliberate indifference  to be culpable he or she must have been subjectively aware of the risk and disregarded it. *Id. a*t  511 U.S. 825, 825–26, 114 S. Ct. at 1980–83.

The Plaintiff however points to no facts that connect any of the individual defendants with this alleged conduct or any Allegany County custom or policy that allows or encourages illicit substances  to be distributed in the ACJ.  Merely, asserting the conclusion without a sufficient factual basis does not state a claim, particularly where, as here, the problem is a known problem for jails in general. For example, see, https://triblive.com/local/pittsburgh-allegheny/attorney-charged-in-drug-smuggling-scheme-at-allegheny-county-jail-grand-jury-recommends-new-policies/
https://pittsburgh.cbslocal.com/2021/07/27/drug-smuggling-scheme-prison-unemployment-fraud/

**4. Plaintiff's claims against the individual defendants in their official capacities must be dismissed as duplicative of the claim against Allegheny County.**

Brooks sued the natural person defendants in their personal and official capacities. Actions against a government official in his or her individual or personal capacity seek to impose liability on the government official for actions taken under color of state law, official capacity actions represent another way to sue the municipality of which the officer is an agent. *See, e.g., Gregory v. Chehi,* 843 F.2d 111, 120 (3d Cir.1988) (personal capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law,   whereas  official  capacity  suits   are   duplicative  of   the  claims  against

the municipality and "generally represent only another way of pleading an action against an entity of which an officer is an agent ...") *Brice v. City of York,* 528 F.Supp.2d 504, 516 n. 19 (M.D.Pa.2007) (claims against state officials in their official capacities merge as a matter of law with the municipality that employs them). Therefore, Plaintiff's official capacity claims against the individual Defendants are the same as claims made against Allegheny  County. *Lenhart v. Pennsylvania*, No. CIV.A. 11-312, 2012 WL 761211, at *6 (W.D. Pa. Jan. 12, 2012), report and recommendation adopted as modified, No. CIV.A. 11-312, 2012 WL 761177 (W.D. Pa. Mar. 7, 2012*); Rulli v. City of Pittsburgh*, No. 2:20-CV-965, 2021 WL 1391761, at *5 (W.D. Pa. Mar. 23, 2021), report and recommendation adopted in part, No. CV 20-965, 2021 WL 1390492 (W.D. Pa. Apr. 13, 2021) (claims against mayor in his official capacity are duplicative and must be dismissed.)

The Plaintiff's official capacity claims against the individual defendants duplicate his claim against Allegheny County and they should be dismissed for that reason.

## Conclusion

For the reasons stated above, Defendants Harper, Williams, Beasom, Zetwo, Raible, Tucker and the County of Allegheny, respectfully demand that the Court dismiss the Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,
s/John A. Bacharach
Assistant County Solicitor
Pa. I.D. #19665
Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, Pennsylvania 15219
(412) 350-1150