**IN THE UNITED STATES DISTRICT COURT**
**FOR WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL L. BROOKS | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-01228 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ORLANDO L. HARPER, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TRINITY SERVICES GROUP, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

AND NOW, comes Defendant, Trinity Services Group, Inc. ("Trinity"), by and through its counsel, and files the within BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, as follows:

## I. FACTUAL ALLEGATIONS

Plaintiff, a former inmate at Allegheny County Jail, alleges that on September 15, 2019, while eating oatmeal from his prison food tray in his pod, he bit into a bag containing a foreign "poisonous" substance. *See, Amended Complaint, ¶20.* He immediately spit the foreign substance or poison on the floor. *See, Amended Complaint,* ¶22. After biting into the bag, Plaintiff lost consciousness for 15-20 minutes, became ill, convulsed, vomited profusely and urinated and defecated on himself. *See, Amended Complaint, ¶1.*

Trinity provides food service to the Allegheny County Jail. *See, Amended Complaint,* ¶10. Plaintiff alleges four (4) counts against Trinity:

- Count I—Section 1983 relative to the "poisoning;"
- Count VI—Civil Racketeer Influenced and Corrupt Organizations Act (RICO)—permitting tobacco, controlled substances, including poisons to be entered into the ACJ through food ordered, prepared and served by Trinity;
- Count VII—RICO—conspiring with the codefendants; and,
- Count VIII—negligence.

Trinity moves for summary judgment because the facts plead do not support causes of action for the claims against it; therefore, all claims against Trinity should be dismissed with prejudice.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiency of the complaint. A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id*. at 555. "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (*citing Twombly*, 550 U.S. at 556). In making this plausibility determination, the Court must first separate the factual and legal elements of the claim and "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (*citing Iqbal*, 129 S.Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

shown 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (*quoting* Fed.R.Civ.P. 8(a)(2))

This Court need not accept inferences drawn by the plaintiffs if they are unsupported by the facts as set forth in the Complaint. *See Cal. Pub. Employee Ret. Sys. v. Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (*citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must this Court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Because Plaintiff has not stated a valid claim against Trinity, his Amended Complaint should be dismissed.

## III. ARGUMENTS

### A. PLAINTIFF'S SECTION 1983 CLAIM FAILS TO STATE A CLAIM BECAUSE NO FACTS PLEAD AN UNCONSTITUTIONAL POLICY, PRACTICE OR CUSTOM.

In Count I, Plaintiff alleges that Trinity and all other Defendants "poisoned [him] or allowed [him] to be poisoned by way of his food tray on September 15, 2019, without provocation and without legitimate penal justification, and Defendants failed to stop the unprovoked and unjustified poisoning of [him.] *See, Amended Complaint,* ¶119. Plaintiff alleges that Trinity, as a food service provider for Allegheny County Jail, acted under color of law. *See, Amended Complaint, ¶10.* As such, an analysis under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) is appropriate.

In accordance with *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Plaintiff must provide evidence that the government unit itself supported a violation of Plaintiff's constitutional rights. *Bielevich v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Monell,* 436 U.S. at 695. No such facts have been plead in the Amended Complaint against Trinity.

The United States Supreme Court in *Monell* held that a civil rights complaint against a municipality or its agency must allege:

1. The existence of a custom or a policy of the governmental entity, which is of such long standing to have the force of law; and
2. That one of the governmental entity's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. *Id.*

A plaintiff must also show a causal link between the alleged custom or policy and the alleged §1983 violation and concomitant harm. In short, "a [governmental entity] can be liable under §1983 only where its policies are the 'moving force behind the violation.'" *City of Canton v. Harris*, 489 U.S. 379, 386 (1989) (*quoting Monell*, 436 U.S. at 694).

No facts were plead that Trinity had an unconstitutional custom, policy or practice that was the proximate cause of Plaintiff's alleged constitutional injury.

> A municipal custom … need not be formally approved by the municipality's decision-makers. *Monell*, 436 U.S. at 690-91. A municipal custom exists when, though not authorized by law, the practices at issue by state officials "are so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Andrews*, 895 F.2d at 1480). A plaintiff can establish a municipal custom by showing that the municipality was aware of similar misconduct in the past, but failed to take precautions against future violations. *Bielevicz*, 915 F.2d at 851.

*Hellmann v. Kercher*, Civil Action No. 07-1373, 2009 U.S. Dist. LEXIS 17279, at *23-24 (W.D.

Pa. Mar. 6, 2009).

In Count I, Plaintiff alleges that Trinity and all other Defendants "poisoned [him] or allowed [him] to be poisoned by way of his food tray on September 15, 2019, without provocation and without legitimate penal justification, and Defendants failed to stop the unprovoked and unjustified poisoning of [him.] *See, Amended Complaint,* ¶119.

It appears as though Plaintiff claims that it was a "custom or policy of Defendant's [sic] to ignore the smuggling or bootlegging of narcotics, other foreign substances or contraband through prison food…". *See, Amended Complaint,* ¶35. First, it is unclear whether Trinity is included in Plaintiff's characterization of "Defendants" with respect to this purported "custom or policy." As such, Plaintiff's Section 1983 claim should be dismissed.

Nevertheless, Plaintiff failed to allege sufficient facts to support the legal contention that such a policy, practice or custom exists. Plaintiff vaguely avers that "it is a known fact to these Defendants that contraband or poisonous substances are being bootlegged or smuggled into the facility through the Defendant Trinity Services Group, Inc. and/or by way of the food or other outside vendors." *See, Amended Complaint,* ¶33. He claims that a "similar and previous poisoning occurred at the ACJ in a like manner;" however, fails to offer any facts elaborating on this alleged prior similar incident. *See, Amended Complaint,* ¶34. This Court need not accept inferences drawn by the plaintiffs if they are unsupported by the facts as set forth in the Complaint. *See Cal. Pub. Employee Ret. Sys. v. Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (*citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Plaintiff's Amended Complaint seeks to do just that. Accordingly, Plaintiff's Section 1983 claim against Trinity should be dismissed.

> It is well-settled that a policy, custom or practice cannot arise from one incident, […]. *See, e.g., Turner v. City of Philadelphia,* 22 F.Supp.2d 434, 437 (E.D.Pa.1998), *quoting Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Absent unusual circumstances, 'proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker" ').

*Brown v. Crawford Cnty.*, CA 12-80, 2013 WL 411472, at *4 (W.D. Pa. Feb. 1, 2013).

Accordingly, Plaintiff failed to state a claim for his Section 1983 against Trinity, and such claim should be dismissed.

**B. IN THE ALTERNATIVE, PLAINTIFF FAILED TO STATE A CLAIM FOR AN EIGHTH AMENDMENT VIOLATION BECAUSE THE CONDUCT ALLEGED WAS NOT "CRUEL AND UNUSUAL."[1]**

> The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from

---

[1] Plaintiff alleges that he was a pre-trial detainee. Therefore, Plaintiff's Section 1983 claim based upon a violation of the Eighth Amendment must be dismissed. Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Hubbard v. Taylor,* 399 F.3d 150 (3d Cir.2005); *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 581 (3d Cir.2003); *Fuentes v. Wagner,* 206 F.3d 335, 341 n. 9 (3d Cir.2000); *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346 n. 31 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). However:

> as a practical matter, the Third Circuit has determined that a § 1983 excessive use of force claim brought by a pretrial detainee under the Fourteenth Amendment Due Process Clause should be analyzed under the same standard as an excessive use of force claim brought under the Eighth Amendment. *Fuentes,* 206 F.3d at 346–47.

*Brown v. Crawford Cnty.,* CA 12-80, 2013 WL 411472, at *5 (W.D. Pa. Feb. 1, 2013)

inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman,* 452 U.S. 337, 344–46, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." *Helling v. McKinney,* 509 U.S. at 32 (quoting *Rhodes,* 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson,* 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes,* 452 U.S. at 347–48; *Young v. Quinlan,* 960 F.2d 351, 364 (3d Cir.1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *Id.* at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997).

*Parrish v. Aramark Foods,* 2012 WL 1118672 (April 2012).

In *Parrish,* the plaintiff alleged that a rusty paper clip was in the sandwich into which he bit. The Court held:

To the extent Plaintiff seeks to assert an Eighth Amendment claim based upon the

> presence of a paper clip in his lunch, he has failed to allege any facts suggesting either an actionable extreme deprivation or deliberate indifference on the part of any correctional officials or food service contractor. The Complaint does not state a claim for cruel and unusual punishment based upon the isolated and random event of the presence of a foreign object in Plaintiff's lunch.

*Id.*

Similarly, in this case, Plaintiff's Amended Complaint fails to allege facts supporting the requisite subjective or object component. As such, Plaintiff's Section 1983 claims against Trinity should be dismissed with prejudice.

### C. IN THE ALTERNATIVE, PLAINTIFF FAILED TO STATE A CLAIM FOR A FOURTEENTH AMENDMENT VIOLATION BECAUSE NO FACTUAL ALLEGATIONS CONSTITUTE PUNISHMENT.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. ...

> *9 441 U.S. at 535–39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540.

> As noted above, with respect to medical care and prison conditions, however, pretrial detainees retain at *least* those constitutional rights enjoyed by convicted prisoners. *Bell v. Wolfish,* 441 U.S. at 545; *Hubbard,* 399 F.3d at 165–66; *Natale,* 318 F.3d at 581–82; *Kost v. Kozakiewicz,* 1 F.3d 176, 187–88 (3d Cir.1993).

*Parrish v. Aramark Foods,* 2012 WL 1118672 (D. NJ April 2012).

In *Parrish,* the Court held that:

> Here, Plaintiff has failed to allege any facts suggesting any intent to punish in connection with either the foreign object in his food or the delivery of medical services. Nor do the facts alleged reflect that the incidents complained of arose out of any arbitrary or purposeless policies or practices. The Complaint fails to state a claim for deprivation of Plaintiff's due process rights.

*Id.*

Similarly, in this case, no facts are plead suggesting any intent to punish in connection with the alleged foreign object in Plaintiff's oatmeal. As such, Plaintiff's Section 1983 claims against Trinity should be dismissed with prejudice.

## D. PLAINTIFF FAILED TO STATE A CLAIM FOR A CONSTITUTIONAL VIOLATION BECAUSE NO FACTS ARE PLEAD OF ANY DIRECT INVOLVEMENT BY TRINITY.

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Estate of Smith v. Marasco,* 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *Argueta v. U.S. Immigration and Customs Enforcement,* 643 F.3d 60, 73 (3d Cir. 2011).

Plaintiff pleads that the defendants are liable to him as a result of his biting into the cellophane encapsulated substance in his oatmeal. If these were non-government actors, his claim would be founded in tort law for the intentional "poisoning" a battery, or for negligence for the adulteration of his food. The Third Circuit's recent analysis in an excessive force claim, a tort of battery, states the history of the legal tenet that Plaintiff establish direct and involvement in the complained-of misconduct:

> We begin with principles of tort liability, which necessarily inform our interpretation of § 1983 as a statute "sounding in tort." *Howell v. Cataldi,* 464 F.2d 272, 278 n.10 (3d Cir. 1972); *see Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (describing § 1983 as a "species of tort liability"). As the Supreme Court has long recognized, a fundamental principle is that a tortfeasor's "liability ... will only result from his own neglect ...." *Dunlop v. Munroe, 11 U .S.* 242, 269, 7 Cranch 242, 3 L.Ed. 329 (1812). That is because "[o]ur system of private liability for the consequences of a man's own acts ... started from the notion of actual intent and actual personal culpability." Oliver Wendell Holmes, Jr., The Common Law 4 (Boston, Little, Brown, & Co. 1881). And, as a result, "[a]n essential element of [a] plaintiffs cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Page Keeton et al., *Prosser and Keeton on Torts* 263 (5th ed., 1984); *see also* Restatement (Second) of Torts § 430 (1965).
>
> Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." *Id.* at 677, 129 S.Ct. 1937 (emphasis added). And, *a fortiori,* if entities and supervisors may not be vicariously liable under § 1983 for the constitutional violation of a given individual, neither may that individual's cohorts who happen to be in the immediate vicinity. *See Anela v. City of Wildwood,* 790 F.2d 1063, 1067-68 (3d Cir. 1986) (observing that defendants may "not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses" (citing *[Rizzo v. Goode,* 423 U.S. 362, 370-71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)]).

*Jutrowski v. Twp. of Riverdale,* 904 F.3d 280, 289-90 (3d Cir. 2018).

Plaintiff alleges here that his ingestion was involuntary and that he was "poisoned" because he ingested some of the substance (cocaine) although he spit out the bagged substance as soon as he bit into it. Plaintiff avers the Defendants "poisoned him or allowed him to be poisoned . . . and failed to stop the poisoning." *See, Amended Complaint,* ¶119. As to the allegation that the Defendants poisoned him with the intent of harming him, Plaintiff pleads no facts as to Trinity that any of its employees or agents individually placed the item in his oatmeal.

Plaintiff's claim that Trinity "allowed" the poisoning also fails. Plaintiff claims that the contraband is routinely entering the jail. There is no constitutional right to be free from exposure to controlled substances while incarcerated.

> `Plaintiffs alleged exposed to illegal drugs in a prison does not violate his constitutional rights. *Nunez v. Salamack,* 1989 WL 74940, at *1 (S.D.N.Y. June 26, 1989) (mere exposure to illegal drugs in prison does not constitute the unnecessary and wanton infliction of pain, even if the effect of such exposure hinders inmate's rehabilitation); *see also Shrader v. White,* 761 F.2d 975, 981 (4th Cir. 1985) (risk that Plaintiff is exposed to illegal drugs inside Department of Correction facilities is no greater than the risk of exposure when not incarcerated); *Alexander v. Padvaiskas,* 2015 WL 10433618, at *3 (D. Mass. Dec. 2, 2015) (right to be protected from voluntary consumption of illicit drugs is well beyond "the minimal civilized measures of life's necessities").

*Smith v. Connections CSP, Inc,* No. CV 17-1733-RGA, 2018 WL 1433840, at *4 (D. Del. Mar. 20, 2018).

The simple fact that drugs enter the jail does not alone apprise Trinity of the specific risk of harm alleged by Plaintiff, that is it would be hidden in a detainee's meal and ingested involuntarily. While there are few cases on point in this Circuit, other courts have considered the issue of the specific risk of harm. "It is not enough to generically allege an influx of drugs into the jail, Plaintiffs Complaint must also demonstrate that each individual County Defendant

subjectively knew of the risk of [the inmate]'s ingesting the illegal drug from the influx." *James v. Bartow Cty., Georgia,* No. 1:16-CV-01381-WSD, 2017 WL 748738, at *7 (N.D. Ga. Feb. 27, 2017) *affd,* 798 F. App'x 581 (11th Cir. 2020). (dismissing inmates § 1983 claim that jail officials knew that the jail must prevent contraband from coming into the jail, that the jail's search procedures were inadequate, that the jail officials had failed to protect the inmate illegal drugs entering the jail, and that an inmate died of a drug overdose). Plaintiff fails to factually establish the nexus between the presence of contraband and his event and instead relies on conjecture and his subjective conclusions. Accordingly, Plaintiff's Section 1983 claims should be dismissed.

**E. PLAINTIFF'S RICO CLAIMS FAIL TO STATE A CLAIM.**

Trinity incorporates Codefendants' argument contained in Argument F of their Brief in Support of Motion to Dismiss Amended Complaint as if fully set forth herein.

**F. PLAINTIFF FAILED TO STATE A CLAIM FOR NEGLIGENCE AGAINST TRINITY BECAUSE HE PLEAD NO FACTS SUPPORTING FORESEEABILITY.**

Pennsylvania courts have held that the "test for negligence is one of 'reasonable foreseeability.'" *Toney v. Chester County Hosp*., 961 A.2d 192, 198-99 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011); *Armstrong v. Paoli Memorial Hosp*., 633 A.2d 605, 608 (Pa. Super. 1993). Specifically, the test is "whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act." *Dahlstrom v. Shrum*, 84 A.2d 289, 290 (Pa. 1951). However, "foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Maisonet v. Enter. Holdings, Inc*., 2013 Phila. Ct. Cm. Pl. LEXIS 207, *6 (Pa. Com Pl. 2013); *see also Huddleston v. Infertility Ctr. of Am*., 700 A.2d 453, 461 (Pa. Super.

1997). It is hornbook law that a duty arises ***only if foreseeability exists***. *Amarhanov v. Fassel*, 658 A.2d 808, 810 (Pa. Super. 1995). Thus, "[f]oreseeability is a legal requirement before recovery can be had." *Maisonet*, 2013 Phila. Ct. Cm. Pl. LEXIS 207 at *5.

Under Pennsylvania law, an employer may only be held liable for negligent supervision of an employee where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside of the scope of his employment and (2) ***is reasonably foreseeable***. *Dempsey v. Walso Bureau Inc*., 246 A.2d 418, 419-22 (Pa. 1968) (emphasis added); *see also* Restatement (Second) of Torts, § 317. With regard to the foreseeability element, "it must be shown that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of its employee." *Dempsey* at 246 A.2d at 422.

In determining foreseeability, the following two (2) inquires arise: "(1) what was [the employee's] conduct prior to the [incident at issue in the claim] and was it of such a nature ***as to indicate a propensity for [intentional harm]***? (2) [D]id [the employer] know, or, in the exercise of ordinary care, should [the employer] have known of [the employee's] prior conduct?" *Id*. (emphasis added). An employer "may subject [itself] to liability under [for negligent supervision] by retaining in [its] employment [employees] who, to [its] knowledge, are in the habit of misconducting themselves in a manner dangerous to others.'" *Dempsey*, 246 A.2d at 420 (*quoting* Restatement (Second) of Torts § 317 cmt. c) (emphasis added).

In the Amended Complaint, Plaintiff vaguely avers that "it is a known fact to these Defendants that contraband or poisonous substances are being bootlegged or smuggled into the facility through the Defendant Trinity Services Group, Inc. and/or by way of the food or other outside vendors." *See, Amended Complaint,* ¶33. He claims that a "similar and previous

poisoning occurred at the ACJ in a like manner;" however, fails to offer any facts elaborating on this alleged prior similar incident. *See, Amended Complaint,* ¶34. Without facts supporting a claim that the risk to Plaintiff was foreseeable, Plaintiff's negligence claim against Trinity fail.

## IV. CONCLUSION

For the reasons stated above, Defendant Trinity Services Group, Inc., respectfully requests this Court dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

Danielle M. Vugrinovich, Esquire
PA ID #88326
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
Union Trust Building
501 Grant Street, Ste. 700
Pittsburgh, PA 15219
Ph - 412 803-1185
Fx – 412-803-1188
dmvugrinovich@mdwcg.com